UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**ALISHA M. ELLIOTT,**

                                 **Plaintiff,**                            18-CV-111Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                                 **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #21

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI"), with the Social Security Administration ("SSA"), alleging disability beginning May 1, 2013, when she was 39 years old, due to high blood pressure, chronic asthma, depression, sinus problems and acid reflux. Dkt. #8-2, pp.93 & 99; Dkt. #8-3, p.4 & Dkt. #8-5, p.2.

On August 5, 2016, plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert, Joey Kilpatrick, before Administrative Law Judge ("ALJ"), Melissa Lin Jones. Dkt. #8, pp.114-151.

Plaintiff testified that her hypertension causes headaches, dizziness and shortness of breath and that the medication for her hypertension caused her to gain 45 pounds. Dkt. #8-2, pp.121-22. Because of her weight, plaintiff became out of breath when she walked from her bedroom to her kitchen and felt like her heart was going to jump out of her chest. Dkt. #8-2, pp.122-23. Although unsure whether her fatigue was caused by her medication or her depression, plaintiff testified that she napped 3-4 hours per day. Dkt. #8-2, p.123.

Plaintiff testified that she lived with her 27 year-old daughter, who runs the bath water and helps plaintiff in and out of the bathtub every morning, washes laundry and shops for food. Dkt. #8-2, pp.123 & 130-31. An adult son and a daughter in high school also live with plaintiff. Dkt. #8-2, p.14. Plaintiff testified that she takes her medication and then has to sit down because she falls asleep. Dkt. #8-2, p.123. She testified that she is still tired when she wakes up and has constant migraines that just won't go away throughout the day. Dkt. #8-2, p.123.

Plaintiff also testified that she has an anger problem and described an incident in which she was arrested after engaging in a confrontation with her landlord. Dkt. #8-2, p.125. Plaintiff testified that she has a quick temper, which causes her to

punch a wall or throw her head into a wall or throw tables or scream. Dkt. #8-2, p.126. Her anger issues never affected her at work, but became worse once she stopped working. Dkt. #8-2, p.126.

Plaintiff has not used marijuana since 2012, but uses alcohol to self medicate from the trauma of childhood abuse. Dkt. #8-2, p.128. Plaintiff testified that she hates waking up with pain and migraines; being unable to move without being out of breath and feeling dizzy; throwing up from the migraines; and having tingling in her extremities from high blood pressure. Dkt. #8-2, p.129. When she's not drinking, she experiences a lot of pain and can't sleep. Dkt. #8-2, p.132.

Plaintiff has a driver's license, but does not drive because her medication makes her feel dizzy. Dkt. #8-2, pp.131-32. She gets to and from medical appointments using Medicaid transportation. Dkt. #8-2, p.132.

When asked to assume an individual with the residual functional capacity ("RFC"), to perform unskilled[1] light work,[2] but only occasional ability to climb ramps and

---

[1] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A perso does not gain work skills by doing unskilled jobs.
20 C.F.R.§ 404.1568(a).

stairs or balance, kneel, crouch, crawl, work at heights or around moving mechanical parts and who could not work in humidity or concentrated dust, odors, fumes, pulmonary irritants, wetness, extreme heat, extreme cold or moderate noise and could not climb ladders, ropes or scaffolds, the vocational expert testified that plaintiff would not be able to perform her past relevant work as a nurse's aide or home health aide, but would be able to work as a cashier, mail clerk or shipping and receiving clerk. Dkt. #8-2, pp.136-38. If limited to occasional interaction with supervisors, co-workers or the public, the VE testified that plaintiff could not work as a cashier, but could still perform as a shipping and receiving clerk or mail clerk and could also work as a laundry sorter. Dkt. #8-2, p.138. If limited to sedentary work,[3] with the additional limitations set forth above, the VE testified that plaintiff could work as a fishing reel assembler, lens inserter, and addresser. Dkt. #8-2, pp.138-139. The VE testified that absences in excess of one and a half days per month would preclude employment. Dkt. #8-2, p.140.

---

[2] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. Is someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as on which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 404.1567(a).

The ALJ rendered a decision that plaintiff was not disabled on August 29, 2016. Dkt. #8-2, p.90. The Appeals Council denied review on November 20, 2017. Dkt. #8-2, p.2. Plaintiff commenced this action seeking review of the Commissioner's final decision on January 23, 2018. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step

sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2013; (2) plaintiff's obesity, hypertension, asthma, migraine headaches and depression constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the capacity to perform unskilled sedentary work with the following limitations: occasional climbing of ramps and stairs and occasional balancing, kneeling, crouching,

crawling, working at heights or around moving parts, can never work in humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme heat, extreme cold, or in moderate noise and can never climb ladders, ropes or scaffolds; and (5) plaintiff was unable to perform her past relevant work as a certified nurses aide and home health aide, but could work in unskilled sedentary positions such as fishing reel assembler, lens inserter and addresser and was not, therefore, disabled within the meaning of the SSA. Dkt. #8-2, pp.95-108.

Plaintiff argues that the ALJ failed to explain her determination that plaintiff retained the capacity to perform sedentary work after rejecting Dr. Siddiqui's medical opinion, which was the only opinion regarding plaintiff's physical limitations. Dkt. #15-1, pp.18-21. More specifically, plaintiff argues that the ALJ failed to consider medical evidence that plaintiff's hypertension was uncontrolled despite as many as eight prescription medications or medical evidence of frequent migraine headaches. Dkt. #15-1, pp.18-19. Plaintiff also argues that the ALJ failed to properly evaluate the opinions of plaintiff's treating psychiatrist, Dr. Panahon, and mischaracterized plaintiff's activities of daily living. Dkt. #15-1, pp.22-26. Plaintiff argues that Dr. Panahon's opinion is consistent with the medical record. Dkt. #15-1, pp.26-28.

The Commissioner responds that the medical record provides sufficient evidence to support the ALJ's RFC and that the ALJ determined that plaintiff's RFC was more restrictive than Dr. Siddiqui's opinion. Dkt. #17-1, pp.9-12. The Commissioner further responds that the ALJ's assessment of Dr. Panahaon's opinion regarding

plaintiff's mental capacity was proper and that the record supported the ALJ's determination that plaintiff possessed the mental capacity to engage in substantial gainful activity. Dkt. #17-1, pp.12-15.

**Dr. Siddiqui**

Dr. Siddiqui performed a consultative examination of plaintiff on September 30, 2013, observing a blood pressure reading of 156/108, prompting him to advise plaintiff to seek immediate medical attention. Dkt. #8-7, p.21. At that point in time, plaintiff was not taking treating or taking medication for depression. Dkt. #8-7, p.22. Plaintiff reported that she was capable of cooking, showering and dressing daily, cleaning and washing laundry weekly, and shopping monthly. Dkt. #8-7, p.22. Dr. Siddiqui opined that plaintiff had no limitation in her ability to sit, stand, climb, push, pull or carry heavy objects, but should avoid dust, smoke and other known respiratory irritants because of her history of asthma. Dkt. #8-7, p.24.

Recognizing that Dr. Siddiqui's opinion was "not consistent with the record as a whole," the ALJ only afforded his opinion partial weight and restricted plaintiff to sedentary work. Dkt. #8-2, p.105. It is unclear, however, whether the ALJ's restriction of plaintiff to sedentary work sufficiently accounts for the functional limitations of plaintiff's severe impairments. Although there is some concern regarding understanding and compliance with the medication regime, blood pressure readings as high as 235/110 were persistent despite medication management assistance from visiting nurses, changing prescription regimens involving numerous medications, and hospital admissions. On November 12, 2014, for example, the Buffalo General Medical

Center Health Clinic noted that plaintiff was currently prescribed 8 anti-hypertensive and 2 diuretic medications but her hypertension continued to be uncontrolled, with a blood pressure reading of 165/100 - "the best reading she ever had." Dkt. #8-8, p.286.

Absent any medical source opinion as to the functional effects of such a consistent history of significantly high blood pressure and the side effects of such a large number of medications to treat plaintiff's high blood pressure, the ALJ's RFC cannot be supported by substantial evidence. *See Trippet v. Comm'r,* 16-CV-908, 2018 WL 4268917, at *4 (W.D.N.Y. Sept. 7, 2018) (remand required where voluminous treatment notes do not clearly assess plaintiff's physical limitations); *Williams v. Berryhill*, 16-CV-283, at *3-4 (W.D.N.Y. April 17, 2017) (ALJ is not qualified to assign functional limitations based upon his own interpretation of complex medical reports).

**Dr. Panahon**

Plaintiff's treating psychiatrist, Dr. Norma Panahon, and plaintiff's licensed mental health counselor ("LMHC-P"), Jessica Whitley, completed a mental impairment questionnaire dated December 18, 2015 indicating monthly psychiatric/medication management and bi-weekly counseling visits with plaintiff since September 25, 2014. Dkt. #8-7, p.274. Dr. Panahon diagnosed plaintiff with major depressive disorder, recurrent, severe; generalized anxiety disorder; PTSD; and Bipolar I disorder (rule out). Dkt. #8-7, p.274. Dr. Panahon opined that plaintiff's highest Global Assessment of Functioning ("GAF"), score in the past year was 50 and opined that her prognosis was poor. Dkt. #8-7, p.274. Dr. Panahon checked off the following symptoms exhibited by

plaintiff:

- anhedonia or pervasive loss of interest in almost all activities;
- decreased energy;
- blunt affect;
- feelings of guilt or worthlessness;
- impairment in impulse control;
- generalized persistent anxiety;
- mood disturbance;
- difficulty thinking or concentrating;
- recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress *(raped by aunt & uncle age 5-8)*;[4]
- psychomotor retardation;
- persistent disturbances of mood or affect;
- apprehensive expectation;
- seclusiveness;
- substance dependence *(in remission)*;
- emotional withdrawal or isolation;
- motor tension;
- emotional lability - *anger outbursts*
- deeply ingrained, maladaptive patterns of behavior;
- sleep disturbance; and
- decreased need for sleep.

Dkt. #8-7, p.275.

---

[4] *Italics* indicate handwritten information added to check list of symptoms.

When asked to opine as to plaintiff's ability to perform a list of work-related activities on a daily basis in a regular work setting, Dr. Panahon opined that plaintiff had no useful ability to perform at a consistent pace without an unreasonable number and length of rest periods and was unable to meet competitive standards with respect to: (a) regular attendance and punctuality; (b) completion of a normal workday and workweek without interruptions from psychologically based symptoms; (c) acceptance of instructions and appropriate response to criticism from supervisors; (d) ability to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; (e) appropriately responding to changes in a routine work setting; (f) ability to deal with normal work stress; (g) interaction with the general public; and (h) ability to maintain socially appropriate behavior. Dkt. #8-7, pp.276-77. Dr. Panahon further opined that plaintiff would be seriously limited, but not precluded in: (a) remembering work-like procedures; (b) sustaining an ordinary routine without special supervision; (c) working in coordination with or proximity to others without being duly distracted; (d) making simple work-related decisions; (e) adhering to basic standards of neatness and cleanliness; (f) ability to travel in unfamiliar places; and (g) use of public transportation. Dkt. #8-7, pp.276-77.

Dr. Panahon opined that plaintiff would have a limited but satisfactory ability to: (a) maintain attention for two hour segments; and (b) ask simple questions or request assistance and an unlimited or very good ability to: (a) understand and remember very short and simple instructions; (b) carry out very short and simple instructions; and (c) be aware of normal hazards and take appropriate precautions. Dkt.

#8-7, p.276. Dr. Panahon added a note that plaintiff's "impulse control and irritability severely decrease ability to respond appropriately to criticism from supervisor/get along with co-workers without exhibiting behavioral extremes" and "severely limit her ability to interact appropriately socially." Dkt. #8-7, pp.276-77. Dr. Panahon further opined that plaintiff's "anxiety, depression, severe stressors compound her hyptertension," noting that plaintiff's blood pressure has not been adequately controlled by PMD, even on medications" and "now she has edema." Dkt. #8-7, p.277.

Dr. Panahon endorsed that plaintiff suffered from an anxiety related disorder and complete inability to function independently outside the area of her home. Dkt. #8-7, p.278.

By letter dated July 28, 206, Dr. Panahon reaffirmed that the limitations set forth in her December 18, 2015 assessment remained true and accurate, adding:

> Her medical problems and her recurrent depression, mood problems, anxiety and PTSD cause her to have marked restriction in her activities of daily living, her social functioning, her ability to concentrate, focus and do decision making. Her PTSD (Post-Traumatic Stress Disorder) was from being a sex trauma victim, from age 5-8 years, from her uncle and aunt. She also has poor coping mechanisms in dealing with her stressors. She has not been able to function for over 3 years due to her depression, mood disorder, anxiety, PTSD, together with her physical/medical problem in the form of malignant hypterension, chronic renal failure. She has a very difficult time coping and dealing with the financial, occupational, family and relationship turbulence that resulted from her mental, psychiatric and medical illness.

Dkt. #8-10, p.539.

The ALJ afforded little weight to Dr. Panahon's opinion, explaining:

> Dr. Panahon opined that the claimant was completely unable to function outside the home, which is inconsistent with her activities. For example, the claimant drives, shops, attends church and uses public transportation.

Dkt. #8-2, p.106. The ALJ also afforded little weight to Dr. Panahon's opinion that plaintiff was unable to work because of high blood pressure as beyond the scope of her expertise. Dkt. #8-2, p.105. The ALJ afforded partial weight to Dr. Panahon's opinion that plaintiff's fainting spells, severe headaches and severe hypertension prevent her from being able to work as inconsistent with the record as a whole. Dkt. #8-2, p.106.

The opinion of a plaintiff's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). If the ALJ determines that the opinion is not entitled to controlling weight, the ALJ must assess the appropriate weight, if any, to give the opinion and must explicitly consider the following, nonexclusive factors: (1) the frequency, length, nature and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the medical evidence; and (4) whether the physician is a specialist. *Id., citing Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The failure to provide good reasons for the weight assigned to a treating physician's opinion requires remand unless the Court's searching review of the record supports the weight afforded by the ALJ to the treating physician. *Id.*

In the instant case, the ALJ did not explicitly address whether Dr. Panahon's opinion should be afforded controlling weight, nor did he explicitly consider any of the *Burgess* factors. Dr. Panahon, a board certified psychiatrist, treated plaintiff monthly between September 25, 2014, prescribed antipsychotic and antidepressant medications to plaintiff and submitted treatment notes of biweekly counseling sessions, which are generally consistent with Dr. Panahon's opinion of significant functional limitations. For example, on October 22, 2015, plaintiff

> appeared very drowsy in session. She reports that she has been sleeping often and slept for an entire Saturday a couple weeks ago and did not realize it. She reports she got into an argument with her oldest daughter in which the daughter broke a mirror and Alisha was going to after her with a piece of the glass but was too tired to do so. She says that afterward her sons told her that she was cooking at the stove and fell and hit her head. She does not remember this happening. She says she has been having difficulty remembering her appointments and has been misplacing things. She is not sure if her care coordinator Amanda came to her house to pick up housing papers but that the housing papers are not on her dresser where she had them anymore.

Kt. #8-10, p.268. On December 7, 2015, plaintiff

> reports that she has been having some difficulty with emotional stability since her medications were changed in November. She states that she will become depressed and start crying for no reason and at other times she will become extremely frustrated and angry for no reason. Alisha reports she has been picking at the skin around her fingers again and she had stopped doing this for a long time. . . . Claimant reports that she is having memory problems, loses track of time, and has been told she talks to herself or to others when they aren't around and doesn't make sense. Alisha says she is not aware when she is doing this. She has told her Dr's that this is happening but they insist that she remain on her medications.

Dkt. #8-10, p.257.

Furthermore, it is unclear how the activities cited by the ALJ, which were reported by plaintiff as of September 10, 2013 and September 24, 2013 (and generally contradicted by subsequent notations in medical records and plaintiff's testimony at her hearing), are sufficient to contradict Dr. Panahon's assessment of plaintiff's functional limitations during her treatment of plaintiff commencing in September of 2014 and continuing through the hearing date. *See Miller v. Colvin*, 122 F. Supp.3d 23, 29 (W.D.N.Y. 2015) (remanding where ALJ did not explain how the performance of limited activities of daily living translates into the ability to perform substantial gainful work in a typical competitive environment.). For example, plaintiff reported on September 10, 2013 and September 24, 2013 that she has a driver's license (but did not indicate that she drove), and that she uses public transportation, but plaintiff testified at her hearing (and the medical record references), that she used Medicaid transportation. On remand, the ALJ shall comply with the treating physician rule and provide good reasons for the weight assigned to Dr. Panahon's opinion of mental functional limitations. *See Parker v. Comm'r,* 18 Civ. 3814, 2019 WL 4386050, at *9 (S.D.N.Y. Sept. 13, 2019) ("While compelling contrary record evidence conceivably could have justified giving little weight to [Dr.'s] opinion, the ALJ did not identify any such evidence, or develop this point in meaningful detail.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #15), is granted in so far as it seeks remand of this matter to the Commission and the Commissioner's motion for judgment on the pleadings (Dkt. #17), is denied.

The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:    Buffalo, New York
           September 26, 2019**

                                        *S/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.
                                        United States Magistrate Judge**